IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECRET LINCOLN,<br>Individually, and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APEX HUMAN SERVICES LLC and MOHAMED SESAY,<br><br>Defendants. | Case No.<br><br><br>JURY TRIAL DEMANDED |

## VERIFIED COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

NOW COMES Plaintiff Secret Lincoln, by and through her attorneys, David M. Manes, Esq. and Prabhu Narahari, Esq. of Manes & Narahari LLC, and respectfully submits this Verified Collective Action and Class Action Complaint on behalf of herself and all those similarly situated, averring as follows:

## SUMMARY

1. Plaintiff brings this Collective Action and Class Action to recover damages for Defendants' unlawful misclassification and unlawful denial of wages and overtime of over 100 employees as independent contractors, depriving them of minimum wage, overtime, beneficial tax treatment, unemployment coverage, workers compensation coverage, and other employee benefits to which they should have been entitled during their employment.

## JURISDICTION AND VENUE

2. This action arises under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act, 43 Pa.C.S.A. §333.104, *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 Pa.C.S.A. §260.1, *et seq* ("WPCL").

3. This Court specifically has jurisdiction over FLSA claims pursuant to 29 U.S.C. §216(b).

4. This Court also has federal question jurisdiction pursuant to 28 U.S.C. §1331.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Eastern Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff Secret Lincoln ("Lincoln") is an adult individual with a primary residence located at 743 Bullock Avenue, Yeadon, PA 19050.

8. Defendant Apex Human Services LLC, ("Apex") is a Pennsylvania limited liability company with a primary address of 332 Laurel Avenue, Clifton Heights, PA, 19018. Apex's location where Lincoln was employed was 204 MacDade Boulevard, Yeadon, PA 19050.

9. Defendant Mohamed Sesay ("Sesay") is the CEO and the Administrator of Apex, and the ultimate decision-maker, exercising day-to-day control over operations and supervising the payment of workers.

10. At all times relevant to this Complaint, Sesay personally made and executed the decisions that resulted in the willful misclassification and denial of pay of hundreds of Apex's workers.

11. Apex and Sesay is jointly and severally liable under the FLSA, PMWA, and WPCL.

## FACTS COMMON
## TO ALL COLLECTIVE ACTION AND CLASS ACTION MEMBERS

12. Apex provides home health services to its clients Pennsylvania including Delaware, Philadelphia, Chester, Bucks, and Montgomery counties.

13. According to its website, Apex describes how it offers "Skilled Nursing Adult" services – "We'll conduct visits to your home to provide skilled nursing services."

14. Apex's website also describes how it offers "Skilled Nursing Pediatrics" services – "Our nurses will work in shifts to meet your child's specialized needs."

15. Between January 2019 and the present, well over 100 Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and other providers have worked at Apex, and Apex has classified virtually all of them as 1099 Independent Contractors rather than employees.

16. Apex requires its contractor RNs and LPNs to sign a document titled "Independent Contractor Agreement," substantially in the form attached as **Exhibit A**.

17. Despite the superficial title "Independent Contractor" and the contract titled as such, Apex's RNs, LPNs, and other workers are in reality employees, under the control and supervision of Apex and without the actual independence required for them to be correctly classified as independent contractors.

18. The Independent Contractor Agreement specifies that Apex's RNs and LPNs will provide skilled nursing services "under the supervision of [Apex] in the residence of the client. It being understood that [Apex] has the exclusive authority to admit and discharge clients."

19. Apex's regular business practice is to establish a direct relationship between itself and individual clients in need of home health services, and then Apex dispatches its workers including RNs and LPNs to provide the needed services in the home of each client on behalf of Apex.

20. The RNs, LPNs, and other providers at Apex do not have any direct business relationship with Apex's clients.

21. The RNs, LPNs, and other providers at Apex are not employed directly by Apex's clients.

22. The RNs, LPNs, and other providers at Apex do not receive payment directly from Apex's clients or submit invoices for their services to Apex's clients; instead, they submit time sheets to Apex to receive payment for their time, and they are specifically barred by Apex from submitting invoices directly to Apex's clients (see Exhibit A).

23. Apex reserves the exclusive right to admit and discharge its clients, and does not permit its RNs, LPNs, or other providers to admit or discharge its clients (see Exhibit A).

24. Apex requires its RNs, LPNs, and other providers to wear identification badges identifying them as Apex nurses.

25. Apex's RNs, LPNs, and other providers are perceived by the public as Apex agents, delivering services to clients on behalf of Apex.

26. Apex represents to the public and to its clients, both explicitly and implicitly, that its RNs, LPNs, and other providers are agents of Apex and not independent contractors.

27. Some of Apex's RNs, LPNs, and other providers are casual or part-time workers, and some are full-time.

28. Many of Apex's RNs, LPNs, and other providers regularly work in excess of 40 hours per week.

29. Each Independent Contractor Agreement specifies a regular hourly rate for each of Apex's workers.

30. Apex does not compensate its RNs, LPNs, and other providers for travel time to, from, and between work sites to which they are dispatched.

31. Apex does not compensate its RNs, LPNs, and other providers at 1.5 times their regular pay rate for hours worked in excess of 40 per week.

32. The unpaid wages and overtime due from Apex to its RNs, LPNs, and other providers has been unpaid for over 60 days.

33. Apex has willfully refused to pay its RNs, LPNs, and other providers wages and overtime as required by state and federal law.

34. Apex pays its RNs, LPNs, and other providers "under the table" with cash or checks that are not submitted through its payroll service, are not reported to any government agency as earned wages, and are not subject to payroll withholding.

35. Since Apex's payments to its RNs, LPNs, and other providers are not treated as wages and are not reported as such, any Apex RN or LPN who applies for unemployment compensation benefits immediately after separation from Apex or within 15 months of separation from Apex (while Apex income should have been included in the unemployment "base year," but would not be because it wasn't reported by Apex as earned wages) would be disqualified for financial eligibility or have their benefit amount substantially reduced.

36. Since Apex does not treat payments to its RNs, LPNs, and other providers as W2 income, it does not remit to the state or federal government the employer side of payroll taxes, causing the full double tax burden or "self-employment tax" to be owed by the RNs, LPNs, and other providers individually.

37. While Apex covered itself and its few W2 employees with liability and malpractice insurance, it required its RNs, LPNs, and other providers to purchase their own liability and malpractice insurance in an amount of at least $1,000,000.

38. While Apex covered its few W2 employees with workers compensation insurance, it did not provide that coverage to its RNs, LPNs, and other providers.

39. Any Apex RN, LPN, and other provider who suffered an injury on the job working for Apex would not be covered by workers compensation insurance.

40. While Apex provides paid sick time and personal time to its few W2 employees, it does not generally provide such to its RNs, LPNs, and other providers.

**FACTS SPECIFIC
TO PLAINTIFF SECRET LINCOLN**

41. Lincoln was employed by Apex as an RN beginning in or around March 2019.

42. As an RN at Apex, Lincoln was misclassified as an independent contractor.

43. Lincoln was subsequently employed again by Apex in a second position as an RN Manager, beginning in or around December 2019.

44. On November 11, 2019, Sesay and Lincoln had the text message exchange attached as **Exhibit B** to discuss the RN Manager job details.

45. In that text message exchange, Sesay made it clear that he was offering Lincoln an "[o]ffice full time job," with additional details: "Clinical nurse manager. You will be in the office

3 days a week and out 2 days a week. You make your own schedule. Paid holidays, personal day, loan facility, and more."

46. In that text message exchange, Sesay also revealed one of the reasons why he and Apex intentionally chose to classify Lincoln as a contractor instead of an employee when he explained that he could avoid taxes that way.

47. An example of Apex's payment record, showing that Lincoln was paid for 23 hours at a regular pay rate of $32/hour during the biweekly pay period from 4/28/2019 – 5/11/2019, but with no payroll withholdings applied, is attached as **Exhibit C**.

## COUNT I
### Collective Action Under the FLSA

48. The above paragraphs are incorporated here by reference.

49. This action is a collective action brought by Ms. Lincoln as one of a class of hundreds of Apex workers who were unlawfully mischaracterized and/or denied wages and overtime due under the FLSA.

50. The other similarly situated workers who were misclassified can be easily identified and contacted by an examination of Defendants' business records to inform them of this collective action and give them the opportunity to opt in.

51. Key questions of the fact and law are common to all members of the Class, which predominate over any questions which affect only individual members of the Class, including *inter alia,* the following:

    a. Whether Apex misclassified workers in the Class as independent contractors rather than employees in violation of the FLSA;

  b. What wages and overtime Apex failed to pay to its workers in violation of the FLSA;

  c. What actual damages Class members are entitled to; and

  d. What liquidated/punitive damages Class members are entitled to.

52. Lincoln's claims are typical of the claims of other members of the Class which she seeks to represent, in that all similarly situated individuals were misclassified while employed by Defendants.

53. Lincoln will fairly and adequately protect the interests of the members of the Class, and Lincoln has no interests which are averse to the interests of the Class. This is evidenced by the fact that any rulings in favor of Lincoln would be rulings that would benefit any other member of the Class.

54. Lincoln has retained competent counsel, with experience handling similar actions.

55. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since separate lawsuits for each member of the Class is impracticable. Even if individual Class members could afford to pursue their own individual cases,

  a. It would be unduly burdensome to the courts;

  b. It would result in significant delays; and

  c. It would increase expenses to all parties.

56. In the interest of judicial economy, a collective action is the appropriate method to bring Count I of this action.

57. Apex is an employer within the meaning of the FLSA.

58. Sesay is an employer within the meaning of the FLSA.

59. As described above, Defendants willfully mischaracterized hundreds of employees as independent contractors in violation of the FLSA, causing them damages.

60. As described above, Defendants willfully failed to pay wages and overtime due to the Class members during their employment, in violation of the FLSA.

**COUNT II**
**Class Action Under the PMWA and WPCL**

61. The above paragraphs are incorporated here by reference.

62. This action is also brought individually and as a Rule 23 class action by Ms. Lincoln as one of a class of hundreds of Apex workers in Pennsylvania who were unlawfully mischaracterized and/or denied wages and overtime due under the PMWA and WPCL.

63. The proposed Class is defined as:

> All individuals presently or formerly employed by Defendants in Pennsylvania at any time in the last three (3) years who were (i) misclassified as independent contractors; (ii) denied overtime compensation at the rate of 1.5 times their regular rate of pay for hours worked in excess of 40 hours per week; and/or (iii) denied wages at their regular rate of pay for hours worked.

64. The other similarly situated workers who were misclassified can be easily identified and contacted by an examination of Defendants' business records to inform them of this class action.

65. Key questions of the fact and law are common to all members of the Class, which predominate over any questions which affect only individual members of the Class, including *inter alia,* the following:

    a. Whether Apex misclassified workers in the Class as independent contractors rather than employees in violation of the PMWA;

  b. What wages and overtime Apex failed to pay to its workers in violation of the PMWA and WPCL;

  c. What actual damages Class members are entitled to;

  d. What liquidated/punitive damages Class members are entitled to

66. Lincoln's claims are typical of the claims of other members of the Class which she seeks to represent, in that all similarly situated individuals were misclassified while employed by Defendants.

67. Lincoln will fairly and adequately protect the interests of the members of the Class, and Lincoln has no interests which are averse to the interests of the Class. This is evidenced by the fact that any rulings in favor of Lincoln would be rulings that would benefit any other member of the Class.

68. Lincoln has retained competent counsel, with experience handling similar actions.

69. A class action is superior to other available methods for the fair and efficient adjudication of Count II of this controversy, since joinder of all members of the Class is impracticable. Even if individual Class members could afford to pursue their own individual cases,

  a. It would be unduly burdensome to the courts;

  b. It would result in significant delays; and

  c. It would increase expenses to all parties.

70. In the interest of judicial economy, a class action is the appropriate method to bring this action.

71. Apex is an employer within the meaning of the PMWA and WPCL.

72. Sesay is an employer within the meaning of the PMWA and WPCL.

73. As described above, Defendants willfully mischaracterized hundreds of employees as independent contractors in violation of the PMWA, causing them damages.

74. While the PMWA contains certain exemptions from overtime and minimum wage requirements, none of these exemptions apply to Plaintiff or the Class members.

75. Defendants failed to maintain accurate records of the time Plaintiff and Class members actually worked.

76. Members of the class have a contractual entitlement to be paid a certain hourly rate for the time they actually worked for Defendants.

77. As described above, Defendants willfully failed to pay wages and overtime due to the Class members during their employment, in violation of the PMWA and WPCL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby respectfully requests that this Court certify a collective action under Count I and a class action under Count II, enter judgment in her favor, and in favor of all those similarly situated, and against the Defendants, and award all damages available at law in equity, including:

    a.    Unpaid wages for hours actually worked, including required compensable travel time;

    b.    Unpaid overtime for hours worked in excess of 40 per week;

    c.    Liquidated damages under the FLSA in an amount of 100% of unpaid wages and overtime;

    d.    Liquidated damages under the WPCL in an amount of 25% of unpaid wages and overtime or a minimum statutory amount of $500 per employee;

    e.    Damages equal to the burden of the self-employment tax imposed on amounts that were paid by Apex to misclassified workers in an amount of approximately 7.65% (Social Security and Medicare taxes);

    f.    Damages equal to the actual cost of obtaining liability insurance;

    g.    Damages equal to the actual cost of obtaining malpractice insurance;

    h.    Damages equal to the health, dental, and vision insurance that should have been provided by Apex;

    i.    Damages equal to the paid sick and vacation time that should have been provided by Apex;

    j.    Damages for lost access to unemployment compensation benefits;

    k.    Damages for lost access to workers compensation insurance coverage;

l. Attorney's fees and costs; and

m. Prejudgment and continuing interest; and

n. Any other relief that the Court deems necessary and proper

          Respectfully Submitted,

          /s/ David M Manes
          David M. Manes, Esq.
          Prabhu Narahari, Esq.
          **MANES & NARAHARI, LLC**
          429 Fourth Avenue, Suite 300
          Pittsburgh, Pa 15219
          (412) 626-5570 Direct
          dm@manesnarahari.com

## VERIFICATION

I, Secret Lincoln, make this verification and state the averments of fact set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

I understand that the statements therein are made subject to the penalty of perjury under the laws of the United States of America.

_____
Secret Lincoln