IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECRET LINCOLN,<br>Individually, and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>APEX HUMAN SERVICES LLC and<br>MOHAMED SESAY,<br><br>    Defendants. | Case No. 2:22-cv-341<br><br>JURY TRIAL DEMANDED |

## AMENDED COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

NOW COMES Plaintiff Secret Lincoln, by and through her attorneys, David M. Manes, Esq. and Prabhu Narahari, Esq. of Manes & Narahari LLC, and respectfully submits this Amended Collective Action and Class Action Complaint on behalf of herself and all those similarly situated, averring as follows:

### SUMMARY

1.    Plaintiff brings this Collective Action and Class Action to recover damages for Defendants' unlawful misclassification and unlawful denial of wages and overtime of over 100 employees as independent contractors, depriving them of minimum wage, overtime, beneficial tax treatment, unemployment coverage, workers compensation coverage, and other employee benefits to which they should have been entitled during their employment.

## JURISDICTION AND VENUE

2. This action arises under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA") and the Pennsylvania Minimum Wage Act, 43 Pa.C.S.A. §333.104, *et seq*. ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 Pa.C.S.A. §260.1, *et seq* ("WPCL").

3. This Court specifically has jurisdiction over FLSA claims pursuant to 29 U.S.C. §216(b).

4. This Court also has federal question jurisdiction pursuant to 28 U.S.C. §1331.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Eastern Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff Secret Lincoln ("Lincoln") is an adult individual with a primary residence located at 743 Bullock Avenue, Yeadon, PA 19050.

8. Defendant Apex Human Services LLC, ("Apex") is a Pennsylvania limited liability company with a primary address of 332 Laurel Avenue, Clifton Heights, PA, 19018. Apex's location where Lincoln was employed was 204 MacDade Boulevard, Yeadon, PA 19050.

9. Defendant Mohamed Sesay ("Sesay") is the CEO and the Administrator of Apex, and the ultimate decision-maker, exercising day-to-day control over operations and supervising the payment of workers.

10. At all times relevant to this Complaint, Sesay personally made and executed the decisions that resulted in the willful misclassification and denial of pay of hundreds of Apex's workers.

11. Apex and Sesay is jointly and severally liable under the FLSA, PMWA, and WPCL.

## FACTS COMMON
## TO ALL COLLECTIVE ACTION AND CLASS ACTION MEMBERS

12. Apex provides home health services to its clients Pennsylvania including Delaware, Philadelphia, Chester, Bucks, and Montgomery counties.

13. According to its website, Apex describes how it offers "Skilled Nursing Adult" services – "We'll conduct visits to your home to provide skilled nursing services."

14. Apex's website also describes how it offers "Skilled Nursing Pediatrics" services – "Our nurses will work in shifts to meet your child's specialized needs."

15. Between January 2019 and the present, well over 100 Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and other providers have worked at Apex, and Apex has classified virtually all of them as 1099 Independent Contractors rather than employees.

16. Apex and Sesay were fully aware of relevant state and federal laws regarding proper classification of employees, and they willfully chose to misclassify hundreds of workers as independent contractors when they should have been classified as employees.

17. In fact, Apex and Sesay specifically engaged in a willful attempt to circumvent state and federal employment law by misclassifying employees as independent contractors to serve their own business purposes, including but not limited to cutting costs on taxes, benefits, and insurance.

18. Apex and Sesay knew or showed reckless disregard at all relevant times that their actions to misclassify employees as independent contractors were in violation of state and federal law.

19. Apex and Sesay did not act in good faith when they misclassified employees as independent contractors.

20. Apex requires its contractor RNs and LPNs to sign a document titled "Independent Contractor Agreement," substantially in the form attached as **Exhibit A**.

21. Despite the superficial title "Independent Contractor" and the contract titled as such, Apex's RNs, LPNs, and other workers are in reality employees, under the control and supervision of Apex and without the actual independence required for them to be correctly classified as independent contractors.

22. The Independent Contractor Agreement specifies that Apex's RNs and LPNs will provide skilled nursing services "under the supervision of [Apex] in the residence of the client. It being understood that [Apex] has the exclusive authority to admit and discharge clients."

23. Apex's regular business practice is to establish a direct relationship between itself and individual clients in need of home health services, and then Apex dispatches its workers including RNs and LPNs to provide the needed services in the home of each client on behalf of Apex.

24. The RNs, LPNs, and other providers at Apex do not have any direct business relationship with Apex's clients.

25. The RNs, LPNs, and other providers at Apex are not employed directly by Apex's clients.

26. The RNs, LPNs, and other providers at Apex do not receive payment directly from Apex's clients or submit invoices for their services to Apex's clients; instead, they submit time sheets to Apex to receive payment for their time, and they are specifically barred by Apex from submitting invoices directly to Apex's clients (see Exhibit A).

27. Apex reserves the exclusive right to admit and discharge its clients, and does not permit its RNs, LPNs, or other providers to admit or discharge its clients (see Exhibit A).

28. Apex requires its RNs, LPNs, and other providers to wear identification badges identifying them as Apex nurses.

29. Apex's RNs, LPNs, and other providers are perceived by the public as Apex agents, delivering services to clients on behalf of Apex.

30. Apex represents to the public and to its clients, both explicitly and implicitly, that its RNs, LPNs, and other providers are agents of Apex and not independent contractors.

31. Some of Apex's RNs, LPNs, and other providers are casual or part-time workers, and some are full-time.

32. Many of Apex's RNs, LPNs, and other providers regularly work in excess of 40 hours per week.

33. Each Independent Contractor Agreement specifies a regular hourly rate for each of Apex's workers.

34. Apex does not compensate its RNs, LPNs, and other providers for travel time to, from, and between work sites to which they are dispatched.

35. Apex does not compensate its RNs, LPNs, and other providers at 1.5 times their regular pay rate for hours worked in excess of 40 per week.

36. The unpaid wages and overtime due from Apex to its RNs, LPNs, and other providers has been unpaid for over 60 days.

37. Apex has willfully refused to pay its RNs, LPNs, and other providers wages and overtime as required by state and federal law.

38. Apex pays its RNs, LPNs, and other providers "under the table" with cash or checks that are not submitted through its payroll service, are not reported to any government agency as earned wages, and are not subject to payroll withholding.

39. Since Apex's payments to its RNs, LPNs, and other providers are not treated as wages and are not reported as such, any Apex RN or LPN who applies for unemployment compensation benefits immediately after separation from Apex or within 15 months of separation from Apex (while Apex income should have been included in the unemployment "base year," but would not be because it wasn't reported by Apex as earned wages) would be disqualified for financial eligibility or have their benefit amount substantially reduced.

40. Since Apex does not treat payments to its RNs, LPNs, and other providers as W2 income, it does not remit to the state or federal government the employer side of payroll taxes, causing the full double tax burden or "self-employment tax" to be owed by the RNs, LPNs, and other providers individually.

41. While Apex covered itself and its few W2 employees with liability and malpractice insurance, it required its RNs, LPNs, and other providers to purchase their own liability and malpractice insurance in an amount of at least $1,000,000.

42. While Apex covered its few W2 employees with workers compensation insurance, it did not provide that coverage to its RNs, LPNs, and other providers.

43. Any Apex RN, LPN, and other provider who suffered an injury on the job working for Apex would not be covered by workers compensation insurance.

44. While Apex provides paid sick time and personal time to its few W2 employees, it does not generally provide such to its RNs, LPNs, and other providers.

45. Upon information and belief, many misclassified employees of Apex became unemployed following their employment by Apex and were either denied unemployment compensation benefits or were discouraged from applying for unemployment compensation benefits as a direct result of Apex's misclassification.

46. Upon information and belief, many misclassified employees of Apex suffered injuries during their employment by Apex and were either denied workers' compensation benefits or were discouraged from applying for workers' compensation benefits as a direct result of Apex's misclassification.

**FACTS SPECIFIC
TO PLAINTIFF SECRET LINCOLN**

47. Lincoln was employed by Apex as an RN beginning in or around March 2019 and continued to work for Apex until on or around March 31, 2020 (less than two years prior to the filing of this action).

48. As an RN at Apex, Lincoln was willfully misclassified as an independent contractor.

49. Lincoln was employed by Apex in a second position as an RN Supervisor/Manager, beginning in or around December 2019.

50. Lincoln was also willfully misclassified by Apex as an independent contractor in her RN Supervisor/Manager position.

51. To illustrate both the misclassification and the willful intent of Apex and Sesay to misclassify, see the November 11, 2019 text message exchange between Sesay and Lincoln attached as **Exhibit B** to discuss the RN Manager job details.

52. In that text message exchange, Sesay made it clear that he was offering Lincoln an "[o]ffice full time job," with additional details: "Clinical nurse manager. You will be in the office 3 days a week and out 2 days a week. You make your own schedule. Paid holidays, personal day, loan facility, and more."

53. In that text message exchange, Sesay also revealed one of the reasons why he and Apex willfully chose to classify Lincoln as a contractor instead of an employee when he explained that he could avoid taxes that way.

54. An example of Apex's payment record, showing that Lincoln was paid for 23 hours at a regular pay rate of $32/hour during the biweekly pay period from 4/28/2019 – 5/11/2019, but with no payroll withholdings applied, is attached as **Exhibit C**.

55. Lincoln worked in excess of 40 hours per week for Apex regularly during multiple weeks of her employment, particularly as an RN Supervisor/Manager, which involved significant time spent in the office, working from home, and working in the field performing work on behalf of Apex to supervise and manage other workers.

56. Lincoln was not compensated at a rate of one-and-a-half times her normal hourly rate for overtime hours worked in excess of 40 per week.

57. Apex failed to accurately record the hours actually worked by Lincoln, and her pay stubs do not accurately reflect the number of hours she actually worked for Apex.

## COUNT I
**Collective Action Under the FLSA**

58. The above paragraphs are incorporated here by reference.

59. This action is a collective action brought by Ms. Lincoln as one of a class of hundreds of Apex workers who were unlawfully mischaracterized and/or denied wages and overtime due under the FLSA.

60. The other similarly situated workers who were misclassified can be easily identified and contacted by an examination of Defendants' business records to inform them of this collective action and give them the opportunity to opt in.

61. Key questions of the fact and law are common to all members of the Class, which predominate over any questions which affect only individual members of the Class, including *inter alia*, the following:

   a. Whether Apex misclassified workers in the Class as independent contractors rather than employees in violation of the FLSA;

   b. What wages and overtime Apex failed to pay to its workers in violation of the FLSA;

   c. What actual damages Class members are entitled to; and

   d. What liquidated/punitive damages Class members are entitled to.

62. Lincoln's claims are typical of the claims of other members of the Class which she seeks to represent, in that all similarly situated individuals were misclassified while employed by Defendants.

63. Lincoln will fairly and adequately protect the interests of the members of the Class, and Lincoln has no interests which are averse to the interests of the Class. This is evidenced by the fact that any rulings in favor of Lincoln would be rulings that would benefit any other member of the Class.

64. Lincoln has retained competent counsel, with experience handling similar actions.

65. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since separate lawsuits for each member of the Class is impracticable. Even if individual Class members could afford to pursue their own individual cases,

    a. It would be unduly burdensome to the courts;

    b. It would result in significant delays; and

    c. It would increase expenses to all parties.

66. In the interest of judicial economy, a collective action is the appropriate method to bring Count I of this action.

67. Apex is an employer within the meaning of the FLSA.

68. Sesay is an employer within the meaning of the FLSA.

69. As described above, Defendants willfully mischaracterized hundreds of employees as independent contractors in violation of the FLSA, causing them damages.

70. As described above, Defendants willfully failed to pay wages and overtime due to the Class members during their employment, in violation of the FLSA.

## COUNT II
### Class Action Under the PMWA

71. The above paragraphs are incorporated here by reference.

72. The PMWA requires that all employers pay all wages due to employees on regular paydays designated in advance by the employer and requires that employers pay 1.5 times the regular rate of pay for all hours worked above 40 in a workweek. This action is also brought individually and as a Rule 23 class action by Ms. Lincoln as one of a class of hundreds of Apex

workers in Pennsylvania who were unlawfully mischaracterized and/or denied wages and overtime due under the PMWA.

73. The proposed Class is defined as:

> All individuals presently or formerly employed by Defendants in Pennsylvania at any time in the last three (3) years who were (i) misclassified as independent contractors; (ii) denied overtime compensation at the rate of 1.5 times their regular rate of pay for hours worked in excess of 40 hours per week; and/or (iii) denied wages at their regular rate of pay for hours worked.

74. The other similarly situated workers who were misclassified can be easily identified and contacted by an examination of Defendants' business records to inform them of this class action.

75. Key questions of the fact and law are common to all members of the Class, which predominate over any questions which affect only individual members of the Class, including *inter alia,* the following:

   a. Whether Apex misclassified workers in the Class as independent contractors rather than employees in violation of the PMWA;

   b. What wages and overtime Apex failed to pay to its workers in violation of the PMWA;

   c. What actual damages Class members are entitled to;

   d. What liquidated/punitive damages Class members are entitled to

76. Lincoln's claims are typical of the claims of other members of the Class which she seeks to represent, in that all similarly situated individuals were misclassified while employed by Defendants.

77. Lincoln will fairly and adequately protect the interests of the members of the Class, and Lincoln has no interests which are averse to the interests of the Class. This is evidenced by the

fact that any rulings in favor of Lincoln would be rulings that would benefit any other member of the Class.

78. Lincoln has retained competent counsel, with experience handling similar actions.

79. A class action is superior to other available methods for the fair and efficient adjudication of Count II of this controversy, since joinder of all members of the Class is impracticable. Even if individual Class members could afford to pursue their own individual cases,

    a. It would be unduly burdensome to the courts;

    b. It would result in significant delays; and

    c. It would increase expenses to all parties.

80. In the interest of judicial economy, a class action is the appropriate method to bring this action.

81. Apex is an employer within the meaning of the PMWA.

82. Sesay is an employer within the meaning of the PMWA.

83. Pursuant to the terms of the PMWA, time is considered to be "hours worked" if the employee is required to be "on duty or at the prescribed work place, or time spent in traveling as part of the duties of the employee…" *34 Pa. Code §231.21.*

84. As described above, Defendants willfully mischaracterized hundreds of employees as independent contractors in violation of the PMWA, causing them damages.

85. While the PMWA contains certain exemptions from overtime and minimum wage requirements, none of these exemptions apply to Plaintiff or the Class members.

86. Defendants failed to maintain accurate records of the time Plaintiff and Class members actually worked.

87. Defendants failed to pay Plaintiff and all those similarly situated Class members 1.5 times their regular rate of pay for all hours worked above 40 in a workweek, in violation of the PMWA.

88. Defendant failed to properly pay Plaintiff and all those similarly situated Class members the pay to which they were contractually entitled by failing to pay for all time worked, including travel time that should have been paid.

89. As described above, Defendants willfully failed to pay wages and overtime due to the Class members during their employment, in violation of the PMWA and WPCL.

90. Plaintiff and all members of the Class have suffered monetary damages as a result of Defendant's willful violations of the PMWA.

## COUNT III
### Class Action Under the WPCL

91. The above paragraphs are incorporated here by reference.

92. The WPCL requires that all employers pay all wages due to employees on regular paydays designated in advance by the employer. This action is also brought individually and as a Rule 23 class action by Ms. Lincoln as one of a class of hundreds of Apex workers in Pennsylvania who were unlawfully mischaracterized and/or denied wages and overtime due under the WPCL.

93. The proposed Class is defined as:

> All individuals presently or formerly employed by Defendants in Pennsylvania at any time in the last three (3) years who were (i) misclassified as independent contractors; (ii) denied overtime compensation at the rate of 1.5 times their regular rate of pay for hours worked in excess of 40 hours per week; and/or (iii) denied wages at their regular rate of pay for hours worked.

94. The other similarly situated workers who were misclassified can be easily identified and contacted by an examination of Defendants' business records to inform them of this class action.

95. Key questions of the fact and law are common to all members of the Class, which predominate over any questions which affect only individual members of the Class, including *inter alia,* the following:

    a. Whether Apex misclassified workers in the Class as independent contractors rather than employees in violation of state and federal law;

    b. What wages and overtime Apex failed to pay to its workers in violation of the WPCL;

    c. What actual damages Class members are entitled to;

    d. What liquidated/punitive damages Class members are entitled to.

96. Lincoln's claims are typical of the claims of other members of the Class which she seeks to represent, in that all similarly situated individuals were misclassified while employed by Defendants.

97. Lincoln will fairly and adequately protect the interests of the members of the Class, and Lincoln has no interests which are averse to the interests of the Class. This is evidenced by the fact that any rulings in favor of Lincoln would be rulings that would benefit any other member of the Class.

98. Lincoln has retained competent counsel, with experience handling similar actions.

99. A class action is superior to other available methods for the fair and efficient adjudication of Count III of this controversy, since joinder of all members of the Class is impracticable. Even if individual Class members could afford to pursue their own individual cases,

      a.    It would be unduly burdensome to the courts;

      b.    It would result in significant delays; and

      c.    It would increase expenses to all parties.

100.    In the interest of judicial economy, a class action is the appropriate method to bring this action.

101.    Apex is an employer within the meaning of the WPCL.

102.    Sesay is an employer within the meaning of the WPCL.

103.    The WPCL defines "wages" as "all earnings of an employee, regardless of whether determined on time, task, piece, commission, or other method of calculation".

104.    As described above, Defendants willfully mischaracterized hundreds of employees as independent contractors in violation of state and federal law, causing them damages.

105.    Defendants failed to maintain accurate records of the time Plaintiff and Class members actually worked.

106.    Members of the class had a contractual entitlement to be paid a certain hourly rate for the time they actually worked for Defendants based on oral and/or written agreements.

107.    Defendant entered into an agreement, consisting of both written and oral promises, with Plaintiff and all those similarly situated Class members to pay wages according to a certain rate.

108.    Defendant failed to properly pay Plaintiff and all those similarly situated Class members the pay to which they were contractually entitled by failing to pay for all time worked, including travel time that should have been paid.

109.    As described above, Defendants willfully failed to pay wages and overtime due to the Class members during their employment, in violation of the WPCL.

110. Plaintiff and all members of the Class have suffered monetary damages as a result of Defendant's willful violations of the WPCL.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby respectfully requests that this Court certify a collective action under Count I and a class action under Count II and Count III, enter judgment in her favor, and in favor of all those similarly situated, and against the Defendants, and award all damages available at law in equity, including:

a. Unpaid wages for hours actually worked, including required compensable travel time at the employees' regular rate of pay;

b. Unpaid overtime for hours worked in excess of 40 per week in the amount of 1.5 times the regular rate of pay;

c. Liquidated damages under the FLSA in an amount of 100% of unpaid wages and overtime;

d. Liquidated damages under the WPCL in an amount of 25% of unpaid wages and overtime or a minimum statutory amount of $500 per employee;

e. Damages equal to the burden of the self-employment tax imposed on amounts that were paid by Apex to misclassified workers in an amount of approximately 7.65% of all amounts actually paid (Social Security and Medicare taxes);

f. Damages equal to the actual cost of misclassified employees obtaining liability insurance;

g. Damages equal to the actual cost of misclassified employees obtaining malpractice insurance;

h. Damages equal to the health, dental, and vision insurance that should have been provided by Apex to misclassified employees;

i. Damages equal to the paid sick and vacation time that should have been provided by Apex to misclassified employees;

j. Damages for lost access to unemployment compensation benefits that misclassified employees should have received if they became unemployed following their employment with Apex;

k. Damages for lost access to workers compensation insurance coverage for misclassified employees;

l. Attorney's fees and costs; and

m. Prejudgment and continuing interest; and

n. Any other relief that the Court deems necessary and proper

Respectfully Submitted,

/s/ David M Manes
David M. Manes, Esq.
Prabhu Narahari, Esq.
**MANES & NARAHARI, LLC**
429 Fourth Avenue, Suite 300
Pittsburgh, Pa 15219
(412) 626-5570 Direct
dm@manesnarahari.com

## VERIFICATION

I, Secret Lincoln, make this verification and state the averments of fact set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

I understand that the statements therein are made subject to the penalty of perjury under the laws of the United States of America.

ال
_____
Secret Lincoln